IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE FLYNN and ARLENE REINFORD, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | NO. _____ |
| vs. | : | |
| | : | |
| BIG SPRING SCHOOL DISTRICT, | : | |
| BIG SPRING BOARD OF SCHOOL | : | |
| DIRECTORS, DR. KEVIN C. | : | |
| ROBERTS, JR., JOHN WARDLE, | : | |
| WILLIAM SWANSON, ROBERT | : | |
| OVER, FRANK MYERS, TODD | : | |
| DEIHL, RICHARD ROUSH and | : | |
| WILLIAMS PIPER; | : | |
| 45 Mount Rock Road, | : | |
| Newville, PA 17241 | : | |
| Defendants. | : | |

## **COMPLAINT**

Plaintiffs Lawrence Flynn and Arlene Reinford (together, "Plaintiffs"), by and through their undersigned legal counsel, bring this Complaint against Defendants Big Spring School District, Big Spring Board of School Directors, Dr. Kevin C. Roberts, Jr., John Wardle, William Swanson, Robert Over, Frank Myers, Todd Deihl, Richard Roush and Williams Piper (collectively, "Defendants"), and in support thereof aver as follows:

1

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.      Venue is proper in this district under 28 U.S.C. § 1391(b) in that the actions giving rise to Plaintiffs' allegations occurred in the Middle District of Pennsylvania, Plaintiff reside within the Middle District of Pennsylvania, and Defendants are all located within the Middle District of Pennsylvania.

## FACTUAL ALLEGATIONS

3.      Plaintiffs Lawrence Flynn and Arlene Reinford are residents within the Big Spring School District ("District").

4.      The District is a governmental entity governed by the provisions of the Public School Code of 1949, 24 P.S. § 1-101 *et seq.* and is located within Cumberland County at the following address: 45 Mt. Rock Road, Newville, PA 17241.

5.      The Big Spring School Board ("Board") is the governing body of elected officials administering the District under the Public School Code, 24 P.S. §§ 1-101 *et seq.*

6.      Dr. Kevin C. Roberts, Jr. is the Superintendent of Schools for the District.

7.      John Wardle, William Swanson, Robert Over, Frank Myers, Todd Deihl, Richard Roush and Williams Piper are individual members of the Board and public officials. Collectively, these individuals are referred to herein as "Board Defendants."

8.      Under the Public School Code and the Sunshine Act, Defendants may only discuss and take official action on items during advertised public meetings in which members of the public may attend and offer public comment. *See* 24 P.S. § 4-421; 65 Pa.C.S. §§ 701 *et seq.*

9.      Under the Sunshine Act, Defendants are permitted to adopt "by official action the rules and regulations necessary for the conduct of its meetings and the maintenance of order;" however, such "rules and regulations shall not be made to violate the intent of" the Sunshine Act. 65 Pa.C.S. § 710.

10.      On or about April 22, 2013, the District and Board set forth a policy stating, "No placards or banners will be permitted within the meeting room." *See* Board Policy 903, attached hereto as Exhibit A.

11.      Although this policy exists, Defendants chose not to enforce this policy during its public meetings.

12.      Defendant Swanson specifically noted that, with respect to signs, "we have never covered this before…" *See* Maddie Seiler, "Big Spring School Board

adjourns early for the first time in at least 18 years," *The Sentinel*, attached hereto as Exhibit B.

13.     Defendant Swanson noted that Defendants chose "not to follow right to the letter policy, which is my prerogative and the [B]oard's prerogative" with respect to signage between August of 2021 until its February 7, 2022 Board meeting.

14.     Plaintiffs have been vocal critics of Defendants during public school board meetings.

15.     On September 7, 2021, Plaintiff Flynn attended a public meeting of the Board and spoke against requiring students to wear face masks. [1]

16.     During the September 7, 2021 Board meeting, Plaintiff Flynn borrowed a homemade sign and held it during the meeting. *See* Maddie Seiler, "Raised signs raise questions at Big Spring school board meetings," *The Sentinel*, attached hereto as Exhibit C.

17.     On October 4, 2021, Plaintiffs both attended a public meeting of the Board and spoke against the face covering requirement.[2]

---

[1] *See* Big Spring School District meeting minutes of September 7 2021, available at https://www.bigspringsd.org/cms/lib/PA02207410/Centricity/Domain/69/9-7-2021%20Board%20Agenda%20Minutes.pdf.

[2] *See* Big Spring School District meeting minutes of October 4 2021, available at https://www.bigspringsd.org/cms/lib/PA02207410/Centricity/Domain/69/10-4-2021%20Board%20Meeting%20Minutes.pdf.

18.     Plaintiff Flynn brought a homemade sign with him and held it during the October 4, 2021 meeting.

19.     On October 18, 2021, Plaintiff Reinford attended a public meeting of the Board and offered public comment in opposition to the face covering requirement.[3]

20.     On November 15, 2021, Plaintiffs attended the Board meeting that date and offered comments regarding the requirement for students to wear face coverings and the recent elections.[4]

21.     Plaintiff Flynn held a homemade sign during the November 15, 2021 meeting.

22.     On December 6, 2021, Plaintiff Reinford spoke against requiring students to wear face coverings.[5]

---

[3] *See* Big Spring School District meeting minutes of October 18 2021, available at https://www.bigspringsd.org/cms/lib/PA02207410/Centricity/Domain/69/10-18-2021%20Board%20Meeting%20Minutes.pdf.

[4] *See* Big Spring School District meeting minutes of December 6, 2021, available at https://www.bigspringsd.org/cms/lib/PA02207410/Centricity/Domain/69/11-15-21%20Board%20Meeting%20Minutes.pdf.

[5] *See* Big Spring School District meeting minutes of December 6, 2021, available at https://www.bigspringsd.org/cms/lib/PA02207410/Centricity/Domain/23/12-6-21%20Board%20Meeting%20Minutes.pdf.

23.     On January 10, 2022, Plaintiff Reinford spoke against requiring students to wear face coverings.[6]

24.     Between September 7, 2021 and February 7, 2022, Plaintiff Reinford held signs during seven Board meetings.

25.     On January 11, 2022, District Superintendent Kevin C. Roberts, Jr. left a voicemail for Plaintiff Reinford, accusing her of having placed a sticker on a bathroom door.

26.     The next day (January 12, 2022), Superintendent Roberts and Plaintiff Reinford spoke and agreed that Plaintiff Reinford would not place any further stickers on school property.

27.     Neither party discussed barring Plaintiff Reinford from school property, and, in fact, Plaintiff Reinford was permitted to attend future Board meetings.

28.     On February 7, 2022, Plaintiff Flynn carried a handmade, poster-sized sign reading "You are offering the children on Big Pharma's alter!"

29.     Prior to the start of the public comment period on February 7, 2022, the Board voted to enforce its policy barring placards and banners from the meeting room.

---

[6] *See* Big Spring School District meeting minutes of January 10, 2022, available at https://www.bigspringsd.org/cms/lib/PA02207410/Centricity/Domain/69/1-10-22%20Board%20Meeting%20Minutes.pdf.

30.     Board member Kenneth Fisher made a motion to remove the ban

placards and banners during the February 7, 2022, stating that he believed the

prohibition was a violation of individuals' First Amendment rights; however, no

other Board member seconded Mr. Fisher's motion. As a result, Mr. Fisher's

motion failed.

31.     During the first public comment period during the February 7, 2022

meeting, various members of the public criticized Defendants' masking policy and

issues related to the masking of students.

32.     After others had offered comments, Plaintiff Flynn offered public

comment, stating

> I want to address the presiding officer. Can you defend the fact that
> you're not in violation of the law with your procedures you've just
> outlined today? And under what authority are you saying we can't
> have signs? Are you guys that afraid of a sign? Does it bother you that
> much?

*See* Exhibit A.

33.     After Plaintiff Flynn completed his comments, he sat down and

silently held up his sign. *See* Exhibit B.

34.     Defendant Swanson instructed Plaintiff Flynn to lower his sign, and

Plaintiff Flynn refused to do so. *Id*.

35.     Defendant then called for a 15-minute recess. *Id*.

36.     Following the recess, Plaintiff Reinford approached the podium to address respecting constitutional rights. *Id*.

37.     As Plaintiff Reinford spoke, Plaintiff Flynn continued to display his sign. *Id*.

38.     Defendant Swanson interrupted Plaintiff's comments with his gavel and called for an immediate end to the meeting. *Id*.

39.     According to Defendant Swanson the meeting "was getting to be a circus, so it was time to shut it down." *See* Exhibit A.

40.     According to Defendant Swanson, the reason for the prohibition on signs is because signs "can … become a distraction and have led to the spread of misinformation, including 'falsehoods about misspending federal money' in the past." *See* Exhibit B (quoting Swanson).

41.     On February 10, 2022, Defendants issued no trespass letters to Plaintiffs barring them from attending future public meetings.

42.     In the February 10, 2022 letter issued by Superintendent Roberts to Plaintiff Flynn, Defendants notified Plaintiff Flynn that he violated Board Policy 903 by holding a sign during its public meeting on February 7, 2022 and that, as a result, he would be "considered a 'trespasser' and the appropriate authorities will be notified immediately" if he was "on the premises or in any … District building"

between the date of the letter and September 1, 2022.  A copy of the no trespass letter sent to Plaintiff Flynn is attached hereto as Exhibit D.

43.     Although the issue was resolved as a result of their January 12, 2022 phone call, Superintendent Roberts sent a notice of no trespassing to Plaintiff Reinford barring her from "on the premises or in any … District building" until September 1, 2022, purportedly as a result of result of her placing a sticker on a bathroom door. A copy of the no trespass letter sent to Plaintiff Reinford is attached hereto as Exhibit E.

44.     Both of the no trespassing letters were sent to the Cumberland County Sheriff's Office.

45.     Since February 10, 2022, Plaintiffs have not attended any of Defendants' public meetings or provided public comment during any meetings out of fear of being deemed a trespasser and arrested.

46.     Defendants have limited the ability to offer public comments solely to those attending in person. *See* Big Spring School District – May 2, 2022 Board Meeting ("Anyone that wishes to speak during the public comment period must attend in person"), attached hereto as Exhibit F.

## COUNT I
### RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. 1983 FACIAL CHALLENGE TO BIG SPRINGS SCHOOL DISTRICT POLICY <u>903, RESTRICTIONS OF PLACARDS AND SIGNS</u>

47.     The averments of the preceding paragraphs are incorporated herein by reference.

48.     The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

49.     The First Amendment's protections extend to public speech at Defendants' school board meetings, by operation of the Fourteenth Amendment.

50.     "The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Shelton v. Tucker*, 364 U.S. 479, 487 (1960).

51.     "[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1985).

52.     A limited public forum is "a subcategory of the designated public

forum." *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136,

142 n.2 (3d Cir. 2017) (internal quotation marks omitted).

53.     A school board meeting at which the public is allowed to speak is a

designated public forum limited to discussing school operation and governance.

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 & n.7 (1983).

54.     Accordingly, content-based restrictions on speech at school board

meetings are only permissible to the extent they "confine the forum to the limited

and legitimate purposes for which it was created." *Galena v. Leone*, 638 F.3d 186,

199 (3d Cir. 2011) (internal quotation marks omitted).

55.     Courts have referred to "limited public forums" and "nonpublic

forums" interchangeably and have, at times, questioned what distinction, if any,

exists between these categories. See *Porter v. City of Philadelphia*, 975 F.3d 374,

386 n.75 (3d Cir. 2020).

56.     A nonpublic forum is "a space that is not by tradition or designation a

forum for public communication." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876,

1885 (2018).

57.     The government may reserve a nonpublic forum "for its intended

purposes, communicative or otherwise, as long as the regulation on speech is

reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id*. at 1885 (quoting *Perry*, 460 U.S. at 46).

58.     In order for a time, place and manner restriction on speech to be reasonable, it must (1) be content-neutral, (2) be narrowly tailored to serve an important governmental interest, and (3) leave open ample alternatives for communication of information. *Galena*, 638 F.3d at 199.

59.     "[S]igns are a form of expression protected by the Free Speech Clause…" *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994).

60.     Here, Defendants' categorical ban on all placards and signs at a public meeting under Policy 903 violates the public's freedom of expression and is not a reasonable restriction on speech.

61.     While Policy 903 is a content-neutral restriction on speech on paper (but not, as discussed in Count II, as-applied), Policy 903 is not "narrowly tailored to serve an important governmental interest" and is unconstitutionally overbroad.

62.     Holding a sign during a public meeting is a form of silent expression that does not interrupt or otherwise disrupt the proceedings of a public meeting.

63.     In *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, the United States Supreme Court found that a school's attempt to prohibit the silent wearing of armbands by students to protest participation in the Vietnam War unconstitutionally infringed upon First Amendment rights. 393 U.S. 503 (1969).

64.     In *H. v. Easton Area Sch. Dist.*, the United States District Court for the Eastern District of Pennsylvania issued a preliminary injunction against a school district that prohibited the wearing of breast cancer awareness bracelets. 827 F. Supp. 2d 392 (E.D. Pa. 2011), *aff'd sub nom. B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293 (3d Cir. 2013).

65.     The United States District Court for New Jersey similarly enjoined the silent wearing of a button by school students in *DePinto v. Bayonne Bd. of Educ.*, 514 F. Supp. 2d 633 (D.N.J. 2007).

66.     The Third Circuit Court of Appeals, in *McCauley v. Univ. of the Virgin Islands*, rejected a wholesale prohibition of "any unauthorized or obscene, offensive or obstructive sign," holding that such a prohibition "is facially overbroad in violation of the First Amendment." 618 F.3d 232, 247-50 (3d Cir. 2010).

67.     As with any other form of expression, signs may convey messages on topics deemed germane by the public at public meetings, including potential criticism of public agencies or public officials and regardless of whether school board members want to hear such criticism or believe that it is fair.

68.     The First Amendment prohibits the exclusion of these viewpoints from public speech at school board meetings, regardless of the meeting's forum classification.

69.     While certain legitimate reasons may exist for prohibiting *some*

signage (such as, for example, signage encouraging drug use), the prohibition on

all signage is not narrowly tailored to further any government interest.

70.     All Defendants are proper parties to this Count, as Defendants took

official action by voting to adopt a custom or practice of enforcing its policy

banning placards and banners during its meeting on February 7, 2022. *See*

*generally* 65 Pa.C.S. § 703 (defining "official action" as, in relevant part, "(2)  The

establishment of policy by an agency. (3)  The decisions on agency business made

by an agency. (4)  The vote taken by any agency on any motion, proposal,

resolution, rule, regulation, ordinance, report or order.").

71.     By enforcing the prohibition on signage under Policy 903,

Defendants, under color of law, deprive Plaintiffs of the right to free speech in

violation of the First and Fourteenth Amendments to the United States

Constitution.

72.     Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are

therefore entitled to damages; declaratory and preliminary and permanent

injunctive relief against continued enforcement and maintenance of Defendants'

unconstitutional customs, policies, and practices; and attorney fees and expenses

pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs request that judgment be enter in their favor and against Defendants as follows:

1. An order permanently enjoining Defendants from enforcing:

   a. District Policy 903's prohibitions on placards and banners during public meetings; and

   b. Defendants' no trespass letters issued to Plaintiffs;

2. Declaratory relief consistent with the injunction, to the effect that Big Spring School District Board Policy 903's speech prohibitions are unconstitutionally void and unenforceable as they violate the First Amendment rights of free speech and petition;

3. An award of nominal damages to Plaintiffs in the amount of $17.76;

4. Against Defendants John Wardle, William Swanson, Robert Over, Kenneth Fisher, Frank Myers, Todd Deihl, Richard Roush and Williams Piper, an award of punitive and exemplary damages to Plaintiffs;

5. Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

6. Any other relief as the Court deems just and appropriate.

**COUNT II**
**RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. 1983**
**AS-APPLIED CHALLENGE TO BIG SPRINGS SCHOOL DISTRICT**
**POLICY 903, RESTRICTIONS OF PLACARDS AND SIGNS**

73.     The averments of the preceding paragraphs are incorporated herein by reference.

74.     As applied to Plaintiffs, Defendants' prohibition on signage under Policy 903 fails to pass constitutional muster.

75.     While Policy 903's restriction on signs has been in place for a number of years, Defendants have never previously enforced this policy with respect to signage. *See* Exhibit B (Defendant Swanson: "we have never covered this before…[we chose] not to follow right to the letter policy, which is my prerogative and the [B]oard's prerogative").

76.     Defendants have never previously banned individuals from school grounds and school buildings on the basis of holding a sign.

77.     Plaintiffs' exercise of free speech by silently holding signs at public meetings is fully protected by the First Amendment.

78.     From September 7, 2021 to February 7, 2022, Plaintiffs held signs during Defendants' public meetings that were critical of Defendants and germane to school policies.

79.    Defendants chose to selectively enforce its prohibition on signage during its February 7, 2022 meeting because they disagreed with the messages conveyed in the sign.

80.    As-applied against Plaintiffs, Policy 903's prohibitions on signage violated and continue to violate Plaintiffs' First Amendment right of free speech by impermissibly discriminating against their speech on the basis of its content and viewpoint.

81.    Should the Board's meetings be deemed nonpublic fora, these prohibitions were and are not employed as reasonable regulations that advance the meetings' purposes, but rather serve only to suppress disfavored speech.

82.    In violating Plaintiffs' First Amendment rights, the individually named defendants have acted in a manner that was reckless, callous, intentional, or malicious.

83.    They have singled out Plaintiffs for their views, conspired to target their speech, and censored them by blanketly prohibiting them from attending public meetings without any alternative means of being able to offer public comment during public meetings. Such actions evince a profound hostility to Plaintiffs' well-established First Amendment rights.

84.     All Defendants are proper parties to this Count, as Defendants took official action by voting to adopt a custom or practice of enforcing its policy banning placards and banners during its meeting on February 7, 2022.

85.     By enforcing these provisions against Plaintiffs, Defendants, under color of law, deprived and continue to deprive Plaintiffs of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

86.     Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages, including punitive damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs request that judgment be enter in their favor and against Defendants as follows:

1. An order permanently enjoining Defendants from enforcing:

   a. District Policy 903's prohibitions on placards and banners during public meetings; and

   b. Defendants' no trespass letters issued to Plaintiffs;

2. Declaratory relief consistent with the injunction, to the effect that Big Spring School District Board Policy 903's speech prohibitions are unconstitutionally

void and unenforceable as they violate the First Amendment rights of free

speech and petition;

3. An award of nominal damages to Plaintiffs in the amount of $17.76;

4. Against Defendants John Wardle, William Swanson, Robert Over, Kenneth

   Fisher, Frank Myers, Todd Deihl, Richard Roush and Williams Piper, an

   award of punitive and exemplary damages to Plaintiffs;

5. Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

   and

6. Any other relief as the Court deems just and appropriate.

## COUNT III
## RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. 1983
## <u>RETALIATION FOR EXERCISE OF FREE EXPRESSION</u>

87.    The averments of the preceding paragraphs are incorporated herein by

reference.

88.    "The First Amendment right to free speech includes not only the

affirmative right to speak, but also the right to be free from retaliation by a public

official for the exercise of that right." *See Bartley v. Taylor*, 25 F.Supp.3d 521

(M.D.Pa. 2014) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th

Cir. 2000)).

89.     Retaliation is "actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *Id*. (quoting *ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993)

90.     "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority." *Id*. (citing *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 415–416 (4th Cir. 2006)).

91.     "A retaliation claim under 42 U.S.C. § 1983 must establish that the government responded to the plaintiff's constitutionally protected activity with conduct or speech that would chill or adversely affect his protected activity." *Id.* (citing *Balt. Sun Co.*, 437 F.3d at 416)

92.     The question before this Court is whether "a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Id.* (citing *Balt. Sun Co.*, 437 F.3d at 416).

93.     Here, Plaintiffs have a history of engaging in protected conduct for purposes of the First Amendment by making public comments and holding sings during meetings of the Board from September 7, 2021 until Defendants banned Plaintiffs from being on District property, including during public meetings.

20

94.     In response to Plaintiffs' exercise of their First Amendment rights, Defendants have retaliated against Plaintiffs by – three days after the February 7, 2022 meeting – completely banning them from District property. *See* Exhibits D and E.

95.     As repeatedly stated by various courts "a trespass warning that completely bars a parent from school board meetings violates the parent's freedom of expression" because "the notice against trespass acted as a categorical ban on all speech…" *See Wilson v. North East Independent Sch. Dist.*, No. 5:14-CV-140-RP, 2015 WL 13716013 (W.D.Tex. Sept. 30, 2015); *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 550 (D. Vt. 2014) ("[P]hysical participation in open school board meetings is a form of local governance, and to the extent that [a banned individual] cannot be present at these meetings to communicate directly with elected officials, his First Amendment right of free expression is violated."); *Stevens v. Sch. City of Hobart*, No. 2:13-CV-336-PRC, 2015 WL 4870789, at *14 (N.D. Ind. Aug. 6, 2015) ("Keeping order on School property is a significant state interest. But an outright ban is not narrowly tailored to achieve that interest…").

96.     With respect to Plaintiff Reinford, the pretextual reason offered by Defendants for banning her from school property was because she allegedly placed a single sticker on a bathroom door on January 10, 2022. *See* Exhibit E.

97.    Plaintiff Reinford and Superintendent Roberts discussed the issue on January 12, 2022; however, Defendants took no action to prevent Plaintiff Reinford from attending any future meetings, including the one held on February 7, 2022.

98.    During the February 7, 2022 meeting, Plaintiff Reinford, during the public comment period, was criticizing Defendants' actions with respect to ensuring constitutional rights are protected when she was interrupted by President Swanson, and the meeting was abruptly adjourned.

99.    Three days after Plaintiff Reinford was interrupted while publicly criticizing Defendants (and a month after the alleged sticker incident), Defendants issued the no trespass letter to Plaintiff Reinford.

100.    But for Plaintiff Reinford's history of criticizing Defendants' policies during public meetings and comments during the February 7, 2022 meeting, she would not have been completely banned from attending meetings or offering public comments.

101.    Further, the temporal proximity between her February 7, 2022 comments and Defendants' February 10, 2022 no trespass letter bolsters the causal link between Plaintiff Reinford's speech and Defendants' retaliatory no trespass letter. *See Lauren W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

102.    With respect to Plaintiff Flynn, the stated reason for banning him from school district property is because he "held a sign up at [his] seat." *See* Exhibit D.

103.   The protected activity in which Plaintiff Flynn engaged (as he had since September 7, 2021) was holding a sign during a public meeting on February 7, 2022.

104.   Defendants' February 10, 2022 no trespass letter banned him from all District property and did not provide any alternate means of providing public comments.

105.   But for Plaintiff Flynn's history of criticizing Defendants' policies during public meetings, comments during the February 7, 2022 meeting and holding a sign during the February 7, 2022 meeting, he would not have been completely banned from attending public meetings or offering public comments.

106.   Further, the temporal proximity between her February 7, 2022 comments and Defendants' February 10, 2022 no trespass letter bolsters the causal link between Plaintiff Flynn's speech and Defendants' retaliatory no trespass letter. *See Lauren W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

107.   Defendants' actions are not merely a de minimis inconvenience because Plaintiffs have been categorically banned from attending public meetings and offering public comments.

108.   Defendants' conduct as set forth above is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Mun. Revenue Servs., Inc. v. McBlain*, 347 Fed.Appx. 817, 824 (3d Cir.2009) (unpublished) (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir.2006)).

23

109.   All Defendants are proper parties to this Count, as Defendants took official action, on or about February 10, 2022, to authorize the sending of the no trespass letters to Plaintiffs.

110.   By preventing Plaintiffs from attending public meetings or offering public comments, Defendants, under color of law, retaliated and continue to retaliate against Plaintiffs due to their exercise of free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

111.   Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages, including punitive damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs request that judgment be enter in their favor and against Defendants as follows:

1. An order permanently enjoining Defendants from enforcing:

    a. District Policy 903's prohibitions on placards and banners during public meetings; and

    b. Defendants' no trespass letters issued to Plaintiffs;

2. Declaratory relief consistent with the injunction, to the effect that Big Spring School District Board Policy 903's speech prohibitions are unconstitutionally

void and unenforceable as they violate the First Amendment rights of free

speech and petition;

3.  An award of nominal damages to Plaintiffs in the amount of $17.76;

4.  Against Defendants John Wardle, William Swanson, Robert Over, Kenneth

Fisher, Frank Myers, Todd Deihl, Richard Roush and Williams Piper, an

award of punitive and exemplary damages to Plaintiffs;

5.  Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

and

6.  Any other relief as the Court deems just and appropriate.

## COUNT IV
## RIGHT TO PETITION, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
## AS-APPLIED CHALLENGE TO BAN FROM PUBLIC MEETINGS AND
## ABILITY TO MAKE PUBLIC COMMENTS

112.   The averments of the preceding paragraphs are incorporated herein by

reference.

113.   Plaintiffs' ability to attend public Board meetings is fully protected by

the First Amendment right to petition the government for a redress of grievances.

114.   Plaintiffs' ability to attend public meetings is also protected under the

Pennsylvania Sunshine Act. *See* 65 Pa.C.S. § 702(a) ("The General Assembly finds

that the right of the public to be present at all meetings of agencies and to witness

the deliberation, policy formulation and decision making of agencies is vital to the

enhancement and proper functioning of the democratic process and that secrecy in

public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society."); *id*. at 702(b) ("The General Assembly hereby declares it to be the public policy of this Commonwealth to ensure the right of its citizens to … to attend all meetings of agencies at which any agency business is discussed or acted upon…").

115.   As applied against Plaintiffs, the categorical banning of Plaintiffs from District property through the no trespass letters violates and continue to violate Plaintiffs' First Amendment right to petition by preventing them from attending public meetings and from offering public comment at such meetings.

116.   Defendants have not offered any alternative means by which Plaintiffs can participate and offer public comments during meetings.

117.   All Defendants are proper parties to this Count, as Defendants took official action, on or about February 10, 2022, to authorize the sending of the no trespass letters to Plaintiffs.

118.   By enforcing these provisions against Plaintiffs, Defendants, under color of law, deprived and continue to deprive Plaintiffs of the right to petition in violation of the First and Fourteenth Amendments to the United States Constitution.

119.   Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages, including punitive damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and

maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs request that judgment be enter in their favor and against Defendants as follows:

1. An order permanently enjoining Defendants from enforcing:

   a. District Policy 903's prohibitions on placards and banners during public meetings; and

   b. Defendants' no trespass letters issued to Plaintiffs;

2. Declaratory relief consistent with the injunction, to the effect that Big Spring School District Board Policy 903's speech prohibitions are unconstitutionally void and unenforceable as they violate the First Amendment rights of free speech and petition;

3. An award of nominal damages to Plaintiffs in the amount of $17.76;

4. Against Defendants John Wardle, William Swanson, Robert Over, Kenneth Fisher, Frank Myers, Todd Deihl, Richard Roush and Williams Piper, an award of punitive and exemplary damages to Plaintiffs;

5. Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

6. Any other relief as the Court deems just and appropriate.

## COUNT V
## PROCEDURAL DUE PROCESS, U.S. CONST. AMEND. XIV, 42 U.S.C. § 1983 CHALLENGE TO BAN FROM PUBLIC MEETINGS AND ABILITY TO MAKE PUBLIC COMMENTS

120.   The averments of the preceding paragraphs are incorporated herein by reference.

121.   By barring Plaintiffs from attending public meetings and not providing any alternative means of providing public comments without a mechanism to challenge such restrictions, Defendants have violated Plaintiffs' procedural due process rights.

122.   As set forth above, Plaintiffs possess liberty interests in engaging in free expression and in petitioning their government at public meetings under the First Amendment.

123.   Neither of the no trespass letters afford Plaintiffs any means by which to challenge the deprivation of rights protected under the First Amendment.

124.    All Defendants are proper parties to this Count, as Defendants took official action, on or about February 10, 2022, to authorize the sending of the no trespass letters to Plaintiffs.

125.   By enforcing these provisions against Plaintiffs, Defendants, under color of law, deprived and continue to deprive Plaintiffs of the right to petition in violation of the First and Fourteenth Amendments to the United States Constitution.

126.   Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages, including punitive damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs request that judgment be enter in their favor and against Defendants as follows:

1. An order permanently enjoining Defendants from enforcing:

   a. District Policy 903's prohibitions on placards and banners during public meetings; and

   b. Defendants' no trespass letters issued to Plaintiffs;

2. Declaratory relief consistent with the injunction, to the effect that Big Spring School District Board Policy 903's speech prohibitions are unconstitutionally void and unenforceable as they violate the First Amendment rights of free speech and petition;

3. An award of nominal damages to Plaintiffs in the amount of $17.76;

4. Against Defendants John Wardle, William Swanson, Robert Over, Kenneth Fisher, Frank Myers, Todd Deihl, Richard Roush and Williams Piper, an award of punitive and exemplary damages to Plaintiffs;

5. Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

6. Any other relief as the Court deems just and appropriate.

**COUNT VI**
**CONSPIRACY TO VIOLATE CIVIL RIGHTS,**
**U.S. CONST. AMENDS. 1, XIV, 42 U.S.C. § 1983**

127. The averments of the preceding paragraphs are incorporated herein by reference.

128. The Board Defendants conspired to violate Plaintiffs' First Amendment rights of free speech and petition by barring, under color of state law, their ability to attend public meetings and to offer public comments.

129. The no trespass letters sent to Plaintiffs document Defendants' unlawful agreement to ban Plaintiffs from school board meetings and prevent Plaintiffs from making any further public comments critical of Defendants.

130. By conspiring to deprive Plaintiffs of their First Amendment speech and petition rights under color of state law, and thereafter following through and implementing said conspiracy, Defendants, under color of law, deprived and continue to deprive Plaintiffs of the rights to free speech and petition in violation of the First and Fourteenth Amendments to the United States Constitution.

131. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983, and are therefore entitled to damages, including punitive damages; declaratory and

preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs request that judgment be enter in their favor and against Defendants as follows:

1. An order permanently enjoining Defendants from enforcing:

   a. District Policy 903's prohibitions on placards and banners during public meetings; and

   b. Defendants' no trespass letters issued to Plaintiffs;

2. Declaratory relief consistent with the injunction, to the effect that Big Spring School District Board Policy 903's speech prohibitions are unconstitutionally void and unenforceable as they violate the First Amendment rights of free speech and petition;

3. An award of nominal damages to Plaintiffs in the amount of $17.76;

4. Against Defendants John Wardle, William Swanson, Robert Over, Kenneth Fisher, Frank Myers, Todd Deihl, Richard Roush and Williams Piper, an award of punitive and exemplary damages to Plaintiffs;

5. Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

6. Any other relief as the Court deems just and appropriate.

Respectfully Submitted,

LAW OFFICE OF TUCKER R. HULL, LLC


By:    */s/ Tucker R. Hull*
        Tucker R. Hull, Esquire (PA 306426)
        Law Office of Tucker R. Hull, LLC
        108 W. Main Street
        P.O. Box 330
        Annville, PA  17003
        (717) 685-7947
        Fax: (717) 685-7942
        tucker@tucker-hull-law.com
Date : 06/16/2022    *Counsel for Plaintiffs*