UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE FLYNN, *et al.*, | : | CIVIL NO. 1:22-CV-00961 |
| | : | |
| Plaintiffs, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| BIG SPRING SCHOOL | : | |
| DISTRICT, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

## I.  Introduction.

The plaintiffs, Lawrence Flynn ("Flynn") and Arlene Reinford ("Reinford"), bring claims against the Big Spring School District ("School District" or "District") for violations of their First Amendment and Procedural Due Process rights.  The case concerns the School District's policy that restricted placards and signs during School Board meetings ("Policy 903") and the School District's decision to ban Flynn and Reinford from future meetings.  Currently pending is the School District's motion for summary judgment.  For the reasons set forth below, we will deny the School District's motion for summary judgment in part and grant it in part.

## II.  Background and Procedural History.

Flynn and Reinford (collectively "the plaintiffs") began this action on June 16, 2022, by filing a complaint against the School District, the Big Spring School Board ("School Board"), the Superintendent of Schools, and members of the School Board. *Doc. 1*.  Soon after, the plaintiffs filed a motion for temporary restraining order seeking to enjoin the defendants from "selective [sic] enforcing Big Spring School District Policy 903 with respect to placards and signs and from barring Plaintiffs from attending public meetings and offering public comments." *Doc. 4*.  The motion for temporary restraining order was dismissed, however, upon the parties' stipulation. *Doc. 16*.

The defendants answered the complaint (*doc. 19*), and consented to magistrate judge jurisdiction (*doc. 20, 21*).  The case was then assigned to us. *Doc. 21*.  We held a case management conference with the parties (*doc. 22, 24*), and we issued a case management order (*doc. 25*).  After we issued five amended case management orders (*docs. 29, 31, 38, 40, 49*), the plaintiffs filed an amended complaint (*doc. 56*).

The amended complaint named only the School District as a defendant and brought five counts against it, all alleging violations of the plaintiffs' First and Fourteenth Amendment rights and brought pursuant to 42 U.S.C. § 1983. *Id.* Specifically, Count One is a facial challenge to the constitutionality of the School

District's Policy 903; Count Two is an as-applied challenge to the constitutionality of Policy 903; Count Three asserts that the School District retaliated against the plaintiffs for their exercise of free speech; Count Four is an as-applied challenge to the School District's policy for banning individuals from public meetings and limiting their ability to make public comments at those meetings; and Count Five asserts that the School District violated the plaintiffs' procedural due process rights when it banned them from public meetings and thereby limited their ability to make public comments *Id.*

On November 20, 2023, the School District filed a motion for summary judgment (*doc. 59*), a brief in support thereof (*doc. 60*), and a statement of material facts as required by our local rules (*doc. 61*).  After seeking and being granted an extension of time to do so (*doc. 62, 63*), the plaintiffs filed a brief in opposition of the motion for summary judgment and a counterstatement of material facts (*doc. 64*).  The time for filing a reply brief has passed (*see* M.D. Pa. L.R. 7.7), and the motion is now ripe.


**III.  Summary Judgment Standards.**

Here, the School District moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.

4

R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial, summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than metaphysical doubt as to the material facts. *Id.* at 252.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N.*

5

*Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV.  Material Facts.

The following facts are the material facts for purposes of the pending summary judgment motion.[1]

Flynn and Reinford both reside in the School District. *Doc. 61* ¶¶ 1, 2.  None of Flynn's six children or Reinford's four children are enrolled in the District's schools, however. *Id.* ¶¶ 3, 19.  Instead, all of the plaintiffs' school-aged children are homeschooled. *Id.*  Nevertheless, between September 7, 2021, and February 7, 2022, both Flynn and Reinford attended multiple public School Board meetings and, while in attendance, publicly commented and held signs. *Id.* ¶¶ 5, 20.  Prior to February 7, 2022, neither Flynn nor Reinford were "prevented . . . from making public comment or . . . from displaying signs." *Id.* ¶¶ 5, 20; *see also doc. 64-1* ¶¶ 5, 20.  During the January 10, 2022 public meeting, Reinford also placed a sticker[2] on

---

[1]  Here, in accordance with Local Rule 56.1, the School District filed a statement of material facts, and the plaintiffs filed a response. *Docs. 61, 64-1.* Where the facts are undisputed, we cite to the School District's statement of material facts (*doc. 61*).  In accordance with our duty to "construe all facts and inferences in favor of the nonmoving party[,]" *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Santini v. Fuentes*, 795 F.3d 410, 419 (3d Cir. 2015)), where the plaintiffs dispute a fact set forth in the School District's statement of material facts and they cite record evidence creating a genuine factual dispute, we cite to the plaintiffs' version of the fact (*doc. 64-1*).  When citing to the page numbers of a document, we use the page numbers from the CM/ECF header on the top of the document.

[2]  Neither the School District's statement of material facts nor the plaintiffs' counterstatement of material facts explain the contents of this sticker. *See generally docs. 61, 64-1.*

a bathroom door. *Doc. 64-1* ¶ 23; *doc. 61-4* at 12–13.  Following this incident,

Reinford spoke "with Superintendent Roberts to resolve the January 2022 sticker

issue" such that she could, and did, attend the February 2022 Board meeting. *Doc.*

*64-1* ¶ 28.

On February 7, 2022, Flynn and Reinford both attended a School Board

meeting. *Doc. 61* ¶¶ 5, 20.  During the meeting, Flynn held a sign that criticized the

School District's use of taxpayer funds and its masking and vaccination policies

("the sign"). *Doc. 64-1* ¶ 5.  While seated, Flynn held the sign above his head "in a

relatively stationary manner, without twirling it in any way." *Id.* ¶ 7 (citing *doc.*

*64-5* at 37, 43–44).  At one point, Flynn turned the sign "around to face the camera

because 'people watching at home' wanted to know what was on the sign[.]" *Doc.*

*Id.* (quoting *doc. 61-2* at 9).  Reinford, however, did not hold the sign. *Doc. 61*

¶ 21.

 Board President Swanson ("President Swanson") asked Flynn to lower the

sign, purportedly because it was obstructing the view of other attendees. *Doc. 61*

¶ 6.  In other words, Board President Swanson decided to enforce Policy 903. *Id.*

¶ 37.  Although President Swanson "alleged that the sign[ ] [was] obstructing the

view of other attendees," "only about three dozen people attended the meeting on

February 7, 2022[,] in an auditorium capable of seating approximately 800

people." *Doc. 64-1* ¶ 6.  Furthermore, the one person who sat behind the sign was

Reinford's daughter, and she could have sat in any other seat had she not wanted to be behind the sign. *Id.* (citing *doc. 64-7* at 57–58; *doc. 64-4* at 8, 22; *doc. 64-8* at 23). And members of the School Board explained that "the real reasons for telling Flynn to lower his sign was because it was a 'distraction' and because 'stating that we spent money illegally is inaccurate.'" *Id.* (citing *doc. 64-6* at 14–15; *doc. 64-5* at 48); *see also doc. 64-1* ¶¶ 37, 38.

Also on February 7, 2022, someone[3] distributed to board members a letter from the plaintiffs' counsel. *Doc. 64-1* ¶ 8. Reinford asked Flynn to retrieve one copy of the letter to provide to a reporter for *The Sentinel* newspaper. *Id.* Flynn approached the Board Members' tables and attempted to take the letter from their table areas without explaining his actions to the Board members. *Doc. 61* ¶ 8. Flynn did, however, speak with the Board secretary before retrieving the letter. *Doc. 64-1* ¶ 8.

Reinford's "public comments were cut off during the February 7, 2022 Board meeting[.]" *Id.* ¶ 24. The parties do not further explain anything else that occurred during the February 7, 2022 meeting, or how that meeting concluded.

On February 10, 2022, both Reinford and Flynn received no trespass letters ("the no trespass letters") from Dr. Roberts, the District's superintendent. *Doc. 61*

---

[3] Neither the statement of material facts nor the counter statement of material facts clarifies who distributed this document. *See doc. 61* ¶ 8; *doc. 64-1* ¶ 8.

¶¶ 9, 24, 36.  The no trespass letter sent to Reinford specifically stated that "she was banning [sic] from attending board meetings as a result of placing one sticker in a bathroom" "purportedly in violation of" a School District policy, specifically Policy 907 relating to School Visitors. *Doc. 64-1* ¶¶ 24, 25; *doc. 61* ¶ 25.

Although they could not attend the School Board meetings in person, Flynn and Reinford were both "aware that the District's public Board meetings were livestreamed during the period in which the no trespass letter was in effect, and" Flynn "watched said Board meetings" and Reinford "watched some [of said] Board meetings[.]" *Id.* ¶¶ 13, 29.  But "the quality of the livestreaming was 'very poor,'" such that, at times, Flynn "could not understand what was being said" and, similarly, Reinford found the sound "almost impossible to hear." *Id.* ¶¶ 13, 29.

Flynn and Reinford were also "notified of other means to share [their] public comments with the Board, specifically that [they] could email all nine Board members, that [they] could email the Superintendent who would forward all emails received to the Board, that [their] emails would be included in the Board packet and announced at the next public meeting, and that [their] emails would be included in the official Board minutes." *Doc. 61* ¶¶ 14, 30.  Reinford, however, "didn't feel like her comments would be translated the way she wanted them to be." *Doc. 64-1* ¶ 30 (cleaned up).  Nevertheless, Flynn and Reinford were both able to send emails to representatives of the School District. *Id.* ¶¶ 15, 31.

Specifically, Flynn sent emails to the Board, the Superintendent, and the Assistant Superintendent during the period in which the no trespass letter was in effect. *Id.* ¶¶ 15, 16.  Flynn chose not to email the Board his public comments, but he did email the Board "multiple times to share pictures of himself with a sign by the road." *Id.* ¶ 17.  "Flynn admits that his emails to the Board were sent, in part, for the purpose of taunting the Board." *Id.* ¶ 18.  Reinford also sent emails to the Board and the Superintendent during the period when the no trespass letters were in effect. *Id.* ¶ 31.  Reinford also chose not to email the Board her public comments, because she "didn't feel like her comments would be translated the way she wanted them to be," but did send emails to the Board and Superintendent about "other matters." *Id.* ¶ 32; *doc. 64-1* ¶ 32.

On March 24, 2022, "more than 30 days after the ban was issued[,]" "Reinford's Counsel received notice . . . from the District's Counsel outlining the dispute resolution procedures" both Reinford and Flynn "could follow to appeal and challenge the no trespass letter." *Doc. 61* ¶¶ 11, 27; *doc. 64-1* ¶¶ 11, 27. Neither Reinford nor Flynn "avail[ed] [themselves] of the policies and procedures to challenge the no trespass letter." *Doc. 61* ¶¶ 12, 28.  "Reinford specifically did not" do so, "because [she] had previously spoken with Superintendent Roberts to resolve the January 2022 sticker issue and attended the February 2022 Board meeting[,]" and "on or about March 7, 2022, . . . Reinford received correspondence

11

from Board member Kenneth Fisher 'which said that the Board is not moving' from banning [the p]laintiffs." *Doc. 64-1* ¶ 28.  And Flynn did not do so "because [he], on March 7, 2022, spoke with Board member William Piper and was informed that the District 'will not rescind the no trespass notice[,]'" and, on that same date, the plaintiffs "received correspondence from Board member Kenneth Fisher 'which said that the Board is not moving' from banning [the p]laintiffs." *Id.* ¶ 12.  "In light of these predeterminations, [the p]laintiffs were concerned about receiving a fair adjudication." *Id.* ¶¶ 12, 28.

Both no trespass letters were rescinded in August 2022. *Doc. 61* ¶¶ 10, 26. As discussed above, after this lawsuit was filed, the School District also revised Policy 903 such that all parties agree that the School District's current Policy 903 "is not in dispute." *Id.* ¶¶ 4, 22.

## V.  Discussion.

As discussed above, the plaintiffs bring five counts in their amended complaint: (1) a facial challenge to the constitutionality of the School District's Policy 903 ("Count One"); (2) an as-applied challenge to the constitutionality of Policy 903 ("Count Two"); (3) a First Amendment retaliation claim ("Count Three"); (4) an as-applied challenge to the School District's policy for banning individuals from public meetings ("Count Four"); and (5) a procedural due process

claim related to the plaintiffs being banned from public meetings ("Count Five").
*Doc. 56.*  All of these claims are brought pursuant to 42 U.S.C. § 1983. *Id.*

Counts One, Two, Three, and Four all challenge the relevant actions as violating the plaintiffs' First Amendment rights.  "The First Amendment of the United States Constitution provides that 'Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people . . . to petition the Government for a redress of grievances.'" *Mirabella v. Villard*, 853 F.3d 641, 653 (3d Cir. 2017) (quoting U.S. Const. amend. I.).  "These two guarantees are known, respectively, as the Speech Clause and the Petition Clause." *Id.*  Counts One and Two relate to the Speech Clause and Count Four relates to the Petition Clause.  Count Three alleges that the School District retaliated against the plaintiffs for activity protected by the First Amendment.  Count Five, on the other hand, is a procedural due process claim based on Fourteenth Amendment protections.  The School District seeks dismissal of all five of these claims.

### A.  Count One is Not Moot.

The parties do not dispute that the School District amended Policy 903 following the initiation of this lawsuit and that the plaintiffs do not challenge the constitutionality of Policy 903 as amended. *Doc. 61* ¶¶ 4, 22.  Without much argument, the School District concludes that Count One is thus moot. *Doc. 60* at

10–11.  The plaintiffs, however, counter-argue that the School District did not meet its heavy burden of demonstrating the lack of a live controversy and further argue that the allegations in Count One fall within two exceptions to the mootness doctrine. *Doc. 64* at 12.  Specifically, the plaintiffs point to the voluntary cessation exception—"where a 'defendant argues mootness because of some action it took unilaterally after the litigation began'"—and describe this matter as "capable of repetition, yet evading judicial review[.]" *Id.* at 12–13.

"Sometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it." *Federal Bureau of Investigation v. Fikre*, 601 U.S. 234, 240, 144 S.Ct. 771, 218 L.Ed.2d 162 (2024).  "When that happens, a federal court must dismiss the case as moot." *Id.*  But a defendant may not "'automatically moot a case' by the simple expedient of suspending its challenged conduct after it is sued." *Id.* at 241.  Rather, "a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur." *Id.* (internal quotation marks omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); citing *United States v. W. T. Grant Co.*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)).  And the defendant's showing must overcome a "'formidable burden.'" *Id.* (quoting *Friends*

14

*of the Earth*, 528 U.S. at 190). "To show that a case is truly moot, a defendant must prove that '"no reasonable expectation"' remains that it will 'return to [its] old ways.'" *Id.* (quoting *W.T. Grant Co.*, 345 U.S. at 632–33).

Put simply, the School District has not met its burden. It merely sets forth that the policy has been changed, it does not proffer any evidence that there is no reasonable expectation that it will revert to the Policy 903 in effect in February 2022.[4] We thus conclude that Count One is not moot. We will, therefore, deny the defendants' motion for summary judgment as to Count One.

### B. Reinford's As-Applied Challenge to Policy 903 Fails.

Count Two challenges the School District's Policy 903 as it was applied to Flynn and Reinford. *Doc. 56* at 15–18. Citing the undisputed material facts, the School District argues that it did not apply Policy 903 against Reinford. *Doc. 60* at 11–12. Specifically, the School District noted that the no-trespass letter Reinford received was based not on Policy 903 but on Reinford's placing a sticker on the

---

[4] Furthermore, in Count One the plaintiffs seek not only declaratory relief but also nominal damages. *Doc. 56* at 15. "Claims for damages are retrospective in nature—they compensate for past harm." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 622 (3d Cir. 2013). "By definition, then, such claims 'cannot be moot,' and '[a] case is saved from mootness if a *viable* claim for damages exists." *Id.* (internal citations omitted) (emphasis in original) (quoting *Lippoldt v. Cole*, 468 F.3d 1204, 1204 (10th Cir. 2006); *Khodara Envtl., Inc. v. Beckman*, 237 F.3d 186, 196 (3d Cir. 2001)). The parties do not address Count One's claims for damages separately.

property, and that Reinford was not holding a sign during the February 7, 2022

Board meeting. *Id.* at 11.  The plaintiffs do not respond to the School District's

arguments relating to Reinford's as-applied challenge to Policy 903. *See doc. 64*.

The plaintiffs have thus forfeited any argument against granting summary

judgment as to this claim.  Accordingly, we will grant the School District summary

judgment as to Count Two only insofar as it is brought by Reinford.


### C.  Flynn's As-Applied Challenge to Policy 903 Survives.

As for Flynn's as-applied challenge to Policy 903, the School District argues

that it only enforced a reasonable time, place, or manner restriction in a limited

public forum. *Doc. 60* at 13–14.  Specifically, according to the School District, "it

was merely requested that [Flynn] lower his sign to prevent the distraction from the

sign spinning and to prevent obstruction of other attendees' views." *Id.* at 13.  And

this decision, the School District argues, was made "without regard to the content

of the sign." *Id.* at 14.  The plaintiffs counterargue, however, that the School

District "ignores the targeted application to Flynn" and point to evidence that the

School District's actions were not content neutral. *Doc. 64* at 14.  The plaintiffs

argue that the School District's reason for asking Flynn to lower his sign—namely,

that it was obstructing other attendees' views—was mere pretext to disguise the

real reason for the School District's request—namely, the School Board members

16

"unease, discomfort and other concerns regarding the content of the signs." *Id.* at 14–15.

"As a limited public forum, a school board meeting 'is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand.'" *Miller v. Goggin*, 672 F. Supp.3d 14, 40 (E.D. Pa. 2023) (quoting *Danielson v. Chester Twp.*, No. CIV.A. 13-5427 JLL, 2014 WL 3362435, at *4 (D.N.J. July 9, 2014) (itself quoting *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 803 (11th Cir. 2004))). Thus, "'content-based restraints are permitted, so long as they are designed to confine the forum to the limited and legitimate purposes for which it was created.'" *Galena v. Leone*, 638 F.3d 186, 199 (3d Cir. 2011) (quoting *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 280 (3d Cir. 2004)). "The government may not[,]" however, "'regulat[e] speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Id.* (quoting *Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 829, 115 S.Ct. 2510, 2516, 132 L.Ed.2d 700 (1995)).

In addition to relevancy-based restrictions, in a limited public forum, the government may also "restrict the time, place and manner of speech, as long as those restrictions are reasonable and serve the purpose for which the government created the limited public forum." *Id.* (citing *Pleasant Grove v. Summum*, 555 U.S. 460, 129 S.Ct. 1125, 1132, 172 L.Ed.2d 853 (2009)). "A time, place, and manner

restriction on speech is reasonable if it is (1) content-neutral, (2) narrowly tailored to serve an important governmental interest, and (3) leaves open ample alternatives for communication of information." *Id.*  And even if a time, place, and manner restriction is reasonable, "there is a First Amendment violation if the defendant applied the restriction because of the speaker's viewpoint." *Id.*

Here, the plaintiffs have pointed to evidence that the restriction on Flynn's speech was applied because of the content of Flynn's sign. *See 64-1* ¶ 6.  And at this procedural posture, we "must view the facts 'in the light most favorable to the nonmoving party." *N. Hudson Reg'L Fire & Rescue*, 665 F.3d at 475 (internal quotation marks omitted).  We thus find there is a genuine issue of material fact as to whether the School District's actions were content neutral.  And, therefore, we will deny the motion for summary judgment as to Count Two insofar as it was brought by Flynn against the School District.

### D.  The plaintiffs' retaliation claims survive.

In Count Three, the plaintiffs bring claims based on the School District retaliating against them for First-Amendment-protected speech.  "'The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right.'" *Elliot v. Pennsylvania Interscholastic Athletic Assoc., Inc.*, 486

F.Supp.3d 838, 846 (M.D. Pa. 2020) (quoting *McGee v. Conyngham Township*, 2018 WL 2045437, at *3 (M.D. Pa. 2018)).  "To bring a claim, under Section 1983, for First Amendment retaliation, the plaintiff must prove (1) that he engaged in First Amendment-protected activity, (2) that the defendant's allegedly retaliatory action was sufficient to deter a person of ordinary firmness from exercising his First-Amendment rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Id.* (cleaned up).

As to Reinford, the School District argues that she did not engage in First Amendment-protected activity. *Doc. 60* at 16.  According to the School District, "Reinford admits that she vandalized District property" and "that the no trespass letter related solely to her vandalism and did not relate to her participation in the District's public Board meeting." *Id.*  The plaintiffs, however, point to Reinford's "constitutionally-protected activities in the form of engaging [in] speech during Board meetings" (*doc. 64* at 16), and the close temporal connection between Reinford's comments at the February 7, 2022 Board meeting and the School District sending Reinford a no trespass letter (*doc. 64* at 17).

The School District's argument focuses on whether Reinford satisfies the first element of a retaliation claim: that the plaintiff engaged in First Amendment-protected activity. *See doc. 60* at 16.  But the School District's recitation of

relevant facts only focuses on Reinford's actions in placing a sticker[5] on School

District property, and ignores that it is also undisputed that Reinford also spoke at

the February 7, 2022 Board meeting.  And the School District argues that Reinford

has not met the first element of proving a First Amendment retaliation claim based

on this erroneous recitation of facts.  Moreover, to the extent the School District

intends to also argue that Reinford fails to meet the causation element because the

no trespass letter cited only Reinford's actions related to the sticker, this argument

also must fail.  "[T]he causation element[] can be established in three ways": "(1) a

suspicious temporal proximity between the protected activity and the adverse

action"; "(2) a pattern of antagonism between the plaintiff and the defendant"; or

(3) "a plaintiff may show that an inference of causation is merited based on

'evidence gleaned from the record as a whole.'" *Jerri v. Harran*, NO. 13-1328,

2016 WL 3453203, *2 (E.D. Pa. June 23, 2016) (citing *Lauren W. ex rel Jean W. v.

DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).  Here, there is a temporal

proximity between Reinford's protected activity (i.e., her public comments at the

February 7, 2022 Board meeting) and the retaliatory action (i.e., the no trespass

letter).  The School District points to Reinford placing the sticker on school

---

[5] The School District actually claims that Reinford stuck "multiple stickers on various walls and doors." *Doc. 60* at 16.  But, as discussed above, the evidence cited by the parties actually supports only the assertion that Reinford placed *one* sticker on a bathroom door. *Doc. 61-4* at 19–20.

property as the reason for the no trespass letter, but Reinford points to evidence

that this reason can be construed as mere pretext to disguise the true motive—

Reinford's first-amendment protected activity.

The School District similarly describes Flynn's actions that resulted in the

no trespass letter as outside the realm of constitutionally protected activity. *Doc. 60*

at 16.  Specifically, the School District connects the no trespass notice to Flynn's

"conduct with a sign" which "interrupted the meeting and obstructed the view of

other attendees." *Id.*  According to the School District, "Flynn has no

constitutionally protected right to interrupt the District's Board meeting and

obstruct the view of other attendees with a spinning sign above his head." *Id.* at 17.

The plaintiffs again argue that this argument ignores evidence that the School

District was concerned about the content of Flynn's sign rather than his conduct

with the sign. *Doc. 64* at 17.  It is clear that there exists a genuine issue as to the

reasons for the School District's decision to send Flynn the no trespass letter.

The School District's argument that a reasonable person's speech would not

be chilled by its actions similarly fails.  "'A retaliation claim under 42 U.S.C.

§ 1983 must establish that the government responded to the plaintiff's

constitutionally protected activity with conduct or speech that would chill or

adversely affect his protected activity.'" *Bartley v. Taylor*, 25 F.Supp.3d 521, 530

(M.D. Pa. 2014) (quoting *Balt. Sun. Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir.

2006)).  "'The determination of whether government conduct or speech has a chilling effect or an adverse impact is an objective one—we determine whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case.'" *Id.* (quoting *Balt. Sun. Co.*, 437 F.3d at 416).  The School District argues that Flynn's access to alternative means to watch Board meetings and communicate with the Board and the School Administration indicates the lack of a chilling effect. *Doc. 60* at 18–19.  But the plaintiffs counter-argue that the alternative methods for engagement with the Board were deeply flawed and did not permit the plaintiffs to fully participate in Board meetings. *Doc. 64* at 19–20. There is also a genuine dispute whether the alternative methods for engagement were substantially similar to attending the Board meetings in person such that the effects of the no trespass letter were no more that "a de minimus inconvenience" rather than an actionable adverse impact. *See Bartley*, 25 F.Supp.3d at 530. Accordingly, we will deny the School District's motion for summary judgment insofar as it seeks summary judgment in its favor as to Count Three.

### E.  The plaintiffs' right to petition claims survive.

In Count Four, the plaintiffs challenge the constitutionality of banning them from the School Board meetings, specifically claiming that doing so violated their

First Amendment right to petition.  "The right to petition the government is 'one of the most precious of the liberties safeguarded by the Bill of Rights.'" *Mirabella*, 853 F.3d at 653 (quoting *BE & K Constr. Co. v. NLRB*, 536 U.S. 524, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (itself quoting *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967))).  The right to petition is essential to the ideal of a republican government as it permits "the 'public airing' of disputes, the 'evolution of the law,' and the use of government as an 'alternative to force.'" *Id.* (quoting *BE & K Constr.*, 536 U.S. at 532, 122 S.Ct. 2390).  "At the same time, the right to petition is not unrestrained or absolute." *Id.* (cleaned up).  "Accordingly, we may ask whether the government may 'nevertheless burden' the right to petition, given countervailing government interests." *Id.* (citing *BE & K Constr.*, 536 U.S. at 535, 122 S.Ct. 2390).

Here, the defendants argue, without citing any case law, that "[s]ignificant alternative means of communication were available to [the p]laintiffs" and these alternative means of communication "adequately allowed [the p]laintiffs to participate in the District's public board meetings" such that the School District "is entitled to judgment as a matter of law" as to Count Four. *Doc. 60* at 19–21.  The plaintiffs follow this style of argument and cite only two cases, neither of which dealt with the right to petition. *Doc. 64* at 19–20.  The plaintiffs spend the bulk of their argument pointing out the insufficiency of the alternative means of

communication—insufficient in both timing[6] and efficacy. *Id.* It appears that the

parties presuppose that the School District could meet its constitutional obligations

by providing sufficient alternative means of participation in the School Board

meetings. *But see Mirabella v. Villard*, 853 F.3d 641, 655 (3d Cir. 2017) ("the

Supreme Court cautioned that 'Speech Clause precedents [do not] necessarily and

in every case resolve Petition Clause claims.'") (quoting *Borough of Duryea v.*

*Guarnieri*, 564 U.S. 379, 382, 394, 131 S.Ct. 2488, 180 L.Ed.2d 408 (2011)).

It is evident that there exists a genuine dispute about whether the alternative

methods of providing comment in the School Board meetings was adequate such

that the plaintiffs' right to petition was preserved. The plaintiffs point to issues

with the quality of the live stream, as well as concerns about being limited to email

public comments rather than the live comments they made when able to attend

School Board meetings in person. *See Barna v. Board of School Directors of the*

*Panther Valley School District*, 143 F.Supp.3d 205, 219–20 (M.D. Pa. 2015) ("The

decision in *Cyr* which rejected telephonic participation in a school board meeting

---

[6] The plaintiffs argue that the no trespass letters were sent over a month
before the District provided the alternative means of making public comments.
*Doc. 64* at 19. But when the District provided the plaintiffs with alternative means
of making public comments was not addressed in the statement or
counterstatement of material facts. *Doc. 61* ¶¶ 14, 30; *Doc. 64-1* ¶¶ 14, 30. We,
therefore, do not further address arguments based on the alleged time that elapsed
between the issuing of the no trespass letters and the notices of alternative methods
of participation in School Board meetings.

as inadequate, a conclusion accepted by this Court, shows the School Board's offer to respond to Barna's written communications to be wholly inadequate.") (reversed in part and remanded on other grounds) (citing *Cyr v. Addison Rutland Supervisory Union*, 60 F.Supp.3d 536, 549 (D. Vt. 2014)).  At this procedural posture, where, like here, there is a genuine issue as to any material fact, those factual issues must be resolved by a fact finder.  Accordingly, we will deny the School District's motion for summary judgment as it relates to Count Four.

### F.  The plaintiffs' procedural due process claims survive.

In Count Five, the plaintiffs challenge their exclusion from the School Board meetings as a violation of their rights to procedural due process.  Specifically, the plaintiffs allege that "[b]y barring [them] from attending public meetings and not providing any alternative means of providing public comments without a mechanism to challenge such restrictions, [the School District] has violated [the p]laintiffs' procedural due process rights." *Doc. 56* at 25–26.  As outlined above, the School District did, in fact, provide a mechanism to challenge the plaintiffs' ban from School Board meetings, but it did so more than 30 days after the no trespass letters were sent. *Doc. 61* ¶¶ 11, 27; *doc. 64-1* ¶¶ 11, 27.  The plaintiffs did not challenge their bans using that provided mechanism, however, because they

were convinced of its futility based on conversations with School District decisionmakers. *See doc. 64-1* ¶¶ 12, 28.

Because the School District provided a mechanism for challenging the bans, in direct contradiction to the complaint's assertion that it did not do so, the School District summarily concludes that it is entitled to judgment as a matter of law. *Doc. 60* at 21.  The School District supports this conclusion by pointing to the facts summarized above that do, in fact, demonstrate that the plaintiffs were provided with a mechanism to challenge the no trespass letters. *Id.*  The School District does not provide any case law, however, which would support the theory that the process provided was that which is constitutionally due. *See id.*  The plaintiffs' response is similarly bereft of case law. *Doc. 64* at 20–21.  Still, the plaintiffs hypothesize that the facts demonstrate that the "[p]laintiffs would have been deprived of due process by not receiving an impartial adjudication[,]" specifically based on the School District decisionmakers' statements that the no trespass letters would not be repealed. *Id.*; *see also doc. 64-1* ¶¶ 12, 28.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law."  "To prevail on 'a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and

26

(2) the procedures available to him did not provide due process of law." *Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 194, 250 Ed. Law Rep. 884 (3d Cir. 2009) (quoting *Hill of Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006)).

Here, there exists a genuine dispute regarding the impartiality of the proffered decisionmakers. And, although the School District has argued that it provided some procedures to challenge the no trespass letters, it has not developed an argument that those procedures were constitutionally sufficient. Accordingly, we will deny the School District's motion for summary judgment as to Count Five.

## VI. Conclusion.

Based on the foregoing, we will grant in part and deny in part the School District's motion for summary judgment (*doc. 59*). Specifically, we will grant the School District's motion for summary judgment insofar as it relates to the claims contained in Count Two that are brought by Reinford. We will deny the School District's motion for summary judgment in all other respects. Accordingly, the following claims remain: Count One; those claims brought by Flynn in Count Two; Count Three; Count Four; and Count Five. An appropriate order follows.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge

27